IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INCUBORN SOLUTIONS, INC., dba              06-CV-481-BR
CYPRESS GOLF SOLUTIONS, and
MICHAEL LOUSTALOT,
                                           OPINION AND ORDER
        Plaintiffs,

v.

GOLFSWITCH, INC., and
SPECTRUM GOLF, INC.,

        Defendants.


DAVID W. AXELROD
JOHNATHAN E. MANSFIELD
PATCHEN M. HAGGERTY
Harris Berne Christensen LLP
Schwabe, Williamson & Wyatt, P.C.
PacWest Center
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR  97204
(503) 222-9981

        Attorneys for Plaintiffs

CRAIG D. BACHMAN
KENNETH R. DAVIS, II
Lane Powell PC
601 S.W. Second Avenue, Suite 2100
Portland, OR  97204-3158
(503) 778-2100

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Transfer to the District of Arizona (#12) and Plaintiffs' Motion for Leave to File a Second Amended Complaint (#27).  For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss, **DENIES as moot** Defendants' Motion in the Alternative to Transfer, and **DENIES** Plaintiffs' Motion for Leave to File a Second Amended Complaint.

<u>BACKGROUND</u>

**I.   Parties**

Plaintiff Incuborn Solutions, Inc., is an Arizona corporation with an office in Arizona and its principal place of business in Oregon.  Incuborn offers a system that enables golfers or other entities to book tee times using the internet. Plaintiff Michael Loustalot is an individual residing in Arizona.

Defendant GolfSwitch, Inc., is a Nevada corporation with its principal place of business in Arizona.  GolfSwitch provides a standardized communications platform that enables real-time access to disparate tee-sheet software programs used by golf courses all over the United States and Europe.  GolfSwitch's technology connects suppliers of tee-time inventory (*i.e.*, golf courses) with golf resellers such as hotels, travel agencies,

2 - OPINION AND ORDER

tour companies, and internet websites "to facilitate a more efficient marketplace for selling and booking tee times." GolfSwitch owns United States Patent No. 7,016,857 (the '857 Patent), which covers "significant aspects" of its technology.

Defendant Spectrum Golf, Inc., is a California corporation with its principal place of business in Arizona. Spectrum owned all rights in the GolfSwitch technology and the associated patent application before it assigned those rights to GolfSwitch in July 2002.

Spectrum hired Loustalot in 1998 to serve as its Vice President of Business Development. Eventually Loustalot was promoted to Chief Executive Officer. In 2002 Spectrum terminated Loustalot for cause and filed an action against him in the District of Arizona. Spectrum alleges it learned Loustalot had converted a substantial amount of Spectrum's funds for his own personal use. Spectrum and Loustalot settled the dispute in October 2004.

In 2001 Spectrum entered into a licensing agreement with Incuborn that provided Incuborn would act as an on-line reseller of golf tee-time reservations to Spectrum customers. As part of the licensing agreement, Incuborn agreed not to use Spectrum's confidential information "for the benefit of entering into and competing against [Spectrum]."

After Loustalot's termination from Spectrum, he began

3 - OPINION AND ORDER

working for Incuborn.  Loustalot is currently the Vice President
of Operations for Incuborn's Northern California market.

## II.  Procedural History

On March 21, 2006, the United States Patent Office issued
the '857 Patent to GolfSwitch.  On April 5, 2006, GolfSwitch sent
letters to Incuborn at its Arizona office and to Loustalot at his
Arizona residence informing them that they were infringing on the
'857 Patent and demanding, among other things, that they cease
infringing GolfSwitch's technology.  GolfSwitch noted it would
commence litigation against Incuborn and Loustalot if they did
not agree to cease infringing GolfSwitch's patent by May 5, 2006.

On April 7, 2006, Incuborn and Loustalot filed a Complaint
in this Court against GolfSwitch seeking a declaration that they
are not infringing the '857 Patent.  On April 20, 2006,
GolfSwitch and Spectrum filed a complaint in the United States
District Court for the District of Arizona in which they allege
claims against Incuborn and Loustalot for infringement of the
'857 Patent, misappropriation of trade secrets, unjust
enrichment, and conversion.  GolfSwitch and Spectrum also allege
a claim against Incuborn for breach of the confidentiality clause
of the licensing agreement, claims against Loustalot for breach
of his employment contract with Spectrum, and a claim against
Loustalot for fraud.

On April 24, 2006, Incuborn and Loustalot served the Complaint in this action on GolfSwitch and Spectrum.  On April 25, 2006, GolfSwitch and Spectrum served the complaint in the Arizona action on Incuborn and Loustalot.

On May 11, 2006, before Defendants filed an answer in this Court, Incuborn and Loustalot filed an Amended Complaint adding Spectrum as a Defendant in this action and seeking a declaration that (1) Incuborn and Loustalot did not infringe the '857 Patent, (2) Incuborn did not misappropriate Defendants' trade secrets, (3) Incuborn did not breach its licensing agreement with Defendants, (4) Incuborn was not unjustly enriched, and (5) Incuborn did not convert Defendants' property.

On June 6, 2006, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer this Case to the District of Arizona.  On June 22, 2006, Plaintiffs filed a Response to Defendants' Motion.  On June 28, 2006, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint against GolfSwitch and Spectrum to include all of the claims in their Amended Complaint and, in addition, seeking declarations that (1) the '857 Patent is invalid and (2) the '857 Patent is unenforceable.

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### Standards

When "a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)(citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the court makes a jurisdictional decision based only on pleadings and any affidavits submitted by the parties and does not conduct an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995)).  When determining whether the plaintiff has met the *prima facie* showing, the court must assume the truth of uncontroverted allegations in the complaint. *Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1187 (9th Cir. 2002).

When the court rules on a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff's version of the facts, unless directly

6 - OPINION AND ORDER

contravened, is taken as true, and the court must resolve factual conflicts in the parties' affidavits in the plaintiff's favor. *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements LTD*, 328 F.3d 1122, 1129 (9th Cir. 2003).

### Discussion

Defendants move to dismiss this action on the grounds that the Court lacks personal jurisdiction over Spectrum, an indispensable party, and over GolfSwitch.

**I.    Indispensable Party**

    **A.    Standards**

Federal Rule of Civil Procedure 19 requires a court to dismiss a civil action if the court lacks personal jurisdiction over any "necessary" and "indispensable" party. *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135-36 (9th Cir. 2005)(citing *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985)(reviewing this analysis)). "Rule 19's necessary and indispensable party 'inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application.'" *Hendricks*, 408 F.3d at 1136 (quoting *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002)).

Rule 19 is designed to protect parties from multiple litigation, inconsistent judicial determinations, or the impairment of interests or rights. *CP Nat'l Corp. v. Bonneville*

7 - OPINION AND ORDER

*Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991).  Rule 19 also is designed to further the public's interest "in avoiding repeated lawsuits on the same essential subject matter."  *Id*. at 912 (citing Fed. R. Civ. P. 19 advisory committee's notes).

> A party is "necessary" to an action if:
>
>> (1) in [its] absence complete relief cannot be afforded among those already parties, or (2)[it] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (I) as a practical matter impair or impede [its] ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

Fed. R. Civ. P. 19(a).

If a party is necessary and cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable."  *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002)(quotation omitted).  Rule 19 sets out four factors for the court to consider when determining whether the matter should proceed or be dismissed for failure to join the absent person:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence

                    will be adequate; fourth, whether the
                    plaintiff will have an adequate remedy if the
                    action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

    **B.**    **Spectrum Is a Necessary and Indispensable Party to this Action.**

      Here Plaintiffs seek declarations from the Court that they did not misappropriate the trade secrets of either Spectrum or GolfSwitch, they did not breach their contracts with Spectrum, they were not unjustly enriched, and they did not convert Defendants' property.

      Spectrum asserts "an interest relating to the subject of the action."  In addition, Spectrum entered into the licensing contract with Incuborn, which is at the heart of the trade-secret misappropriation, the unjust enrichment, the conversion, and the breach-of-contract issues.  The relief Plaintiffs seek may "impair or impede [Spectrum's] ability to protect [its] interest" or leave Spectrum subject to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because the declarations that Plaintiffs request would affect Spectrum's rights with regard to the licensing agreement.  The Court, therefore, concludes Spectrum is a necessary party.

    To determine whether Spectrum also is an indispensable party, the Court considers the factors set out in Rule 19:

      1.  <u>Extent of Prejudice to Spectrum</u>

      Analysis under the first factor mirrors the

9 - OPINION AND ORDER

impaired-interest analysis under Rule 19(a).  *Kescoli v. Babbitt*,
101 F.3d 1304, 1311 (9th Cir. 1996).  As noted, Spectrum asserts
an interest in the subject matter of this action, and its
interest may be harmed if it is not a party to this action.
The first factor, therefore, weighs in favor of dismissal in
light of the Court's conclusion that it does not have personal
jurisdiction over Spectrum.

      2.    Extent to Which Relief Can Be Shaped to Minimize
             Prejudice to Spectrum and the Adequacy of a
             Judgment Without Spectrum

      Plaintiffs seek declarations based on contracts
and agreements entered into with Spectrum.  It would be
impossible, therefore, to fashion a meaningful judgment as to
Plaintiffs' requests for declaratory relief that would not affect
Spectrum's interests.  Accordingly, these factors weigh in favor
of dismissal.

      3.    Whether an Alternative Forum Exists

      If the Court dismisses this action, Plaintiffs
will have an adequate remedy in the United States District Court
for the District of Arizona.  As noted, Plaintiffs' sales and
marketing office is located in Arizona, Loustalot is a resident
of Arizona, and Spectrum entered into the contracts with
Loustalot and Incuborn in Arizona.  Thus, the District of Arizona
is equipped equally as well as this Court to address the issues
in this matter.  Accordingly, this factor weighs in favor of

10 - OPINION AND ORDER

dismissal.

Based on these factors and equitable considerations, the Court concludes Spectrum also is a necessary and indispensable party to this action under Rule 19.

## II.  Personal Jurisdiction

### A.  Standards

To determine personal jurisdiction in cases involving patent infringement, the Court applies the law of the Federal Circuit rather than the law of the Ninth Circuit. *Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351, 1354 (Fed. Cir. 2002). *See also Red-Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

To determine whether a court may exercise personal jurisdiction over a defendant, the court must conduct a two-step inquiry:  (1) whether the forum state's long-arm statute reaches the defendant and (2) whether the exercise of jurisdiction comports with the federal constitutional principle of due process. *Red-Wing Shoe*, 148 F.3d at 1358.  "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). *See also* Or. R. Civ. P. 4L.  Thus, the two-step inquiry folds into one:  whether the exercise of personal jurisdiction comports with due process.

Due process requires the defendant to have "certain

minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)(quotation omitted).

    1.   <u>General Jurisdiction</u>

A court may assert general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Red Wing*, 148 F.3d at 1359 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). This "fairly high" standard requires the contacts to be the sort that approximate physical presence within the state. *North Am. Phillips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578 (Fed. Cir. 1994). Random, fortuitous, or attenuated contacts are not sufficient. *Red Wing*, 148 F.3d at 1359. In addition, "contacts resulting from the 'unilateral activity' of others do not count." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, n.17 (1985)).

    2.   <u>Specific Jurisdiction</u>

In the Federal Circuit, specific jurisdiction exists if (1) the defendant has purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is fair and reasonable. *Inamed Corp. v.*

12 - OPINION AND ORDER

*Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)(citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)).

**B.    The Court Lacks Personal Jurisdiction over Spectrum.**

        Defendants assert the Court has neither general nor specific jurisdiction over Spectrum because Spectrum has never had any contacts with Oregon.  Spectrum does not have any offices, employees, sales, contact, or presence in Oregon. Plaintiffs rely heavily on GolfSwitch's licensing agreement with an Oregon golf course to support their contention that this Court has personal jurisdiction over GolfSwitch and Spectrum. GolfSwitch, however, entered into that contract three years after Spectrum sold the business to GolfSwitch, and, therefore, Spectrum was not a party to the agreement.  Plaintiffs do not allege Spectrum itself had contacts with Oregon.  In fact, in their Response, Plaintiffs do not provide any evidence or make any substantive argument to support their position that the Court has jurisdiction over Spectrum.

        Accordingly, on this record, the Court concludes it lacks personal jurisdiction over Spectrum.

        Federal Rule of Civil Procedure 19 requires a court to dismiss a civil action if the court lacks personal jurisdiction over any "necessary" and "indispensable" party.  *Hendricks,* 408 F.3d at 1135-36.  Here the Court concludes it lacks personal jurisdiction over Spectrum and that Spectrum is an indispensable

13 - OPINION AND ORDER

party.

Accordingly, the Court must dismiss this matter. *See Teamsters Union v. Morton*, 377 U.S. 252, 257 (1964)(Because the court had no jurisdiction over indispensable parties, it was compelled to dismiss the action).

**C.   The Court Lacks Personal Jurisdiction over GolfSwitch.**

Even if the Court did not have to dismiss this matter because it lacks jurisdiction over Spectrum, an indispensable party, the Court would have to dismiss this matter because it also lacks personal jurisdiction over GolfSwitch.

To support its position that this Court has general or specific personal jurisdiction over GolfSwitch, Plaintiffs rely on (1) the licensing agreement between GolfSwitch and one Oregon golf course, which permits the golf course to use GolfSwitch's technology, and (2) GolfSwitch's interactive website to which some Oregon users have provided their mailing addresses.

    1.   <u>General Jurisdiction</u>

        a.   <u>GolfSwitch's Website</u>

A number of courts have concluded the fact that a party maintains an interactive website is not enough to establish general jurisdiction. *See, e.g.*, *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1019 (N.D. Cal. 2005)("the fact that [the defendant] maintains a highly interactive website . . . would not be enough to establish

14 - OPINION AND ORDER

general jurisdiction.")(citations omitted); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999)("[T]he establishment of a website through which customers can order products does not, on its own, suffice to establish general jurisdiction because this would effectively hold that any corporation with such a website is subject to general jurisdiction in every state."). The reasoning of the courts in these cases is persuasive. Accordingly, the Court concludes the fact that GolfSwitch maintains an interactive website is insufficient to establish the Court's general jurisdiction over GolfSwitch.

In addition, only .2% of the 1.2 million individuals who have used GolfSwitch's system to make tee-time reservations have Oregon addresses. The Federal Circuit affirmed without opinion another district court's determination that three percent of sales in the forum was insufficient to establish general jurisdiction. *See Stairmaster Sports/Med. Prod., Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1053 (W.D. Wash. 1994), *aff'd*, 78 F.3d 602 (Fed. Cir. 1996). *See also Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 858 (Fed. Cir. 1999)(the defendant's "very limited sales" within the forum were insufficient to justify forum's exercise of personal jurisdiction); *Injen Tech. Co., Inc. v. Advanced Engine Mgmt.*, 270 F. Supp. 2d 1189, 1194 (S.D. Cal. 2003)(the fact that sales

15 - OPINION AND ORDER

to parties in the district constituted 2% of the defendant's total sales did not support the court's general jurisdiction over the defendant). *Compare LSI Ind., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)(the court had general jurisdiction based on the defendant having millions of dollars of sales and a broad distributorship network in the forum).

        In line with the analysis in these cases, the Court concludes the fact that .2% of GolfSwitch website users have addresses in Oregon is insufficient to support this Court's general jurisdiction over GolfSwitch.

    b.   GolfSwitch's Licensing Agreement with an Oregon Golf Course

        To support its position, Plaintiffs also rely on GolfSwitch's licensing agreement with one Oregon golf course. A single contract, however, generally does not establish sufficient minimum contacts to support general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). To satisfy due-process requirements, a contract with a forum resident must contemplate an ongoing relationship beyond the license such as "granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006). Here the licensing agreement does not contain any such provisions. In addition, the Oregon golf course is one of

16 - OPINION AND ORDER

hundreds in numerous forums that use GolfSwitch's technology.
Accordingly, this single licensing agreement is insufficient to
establish the Court's general jurisdiction over GolfSwitch.

In summary, the Court concludes the existence of
GolfSwitch's interactive website, evidence that .2% of
individuals using the website have Oregon addresses, and the
existence of one licensing agreement with an Oregon corporation
out of hundreds of licensing agreements nationwide are not
sufficient to establish this Court's general jurisdiction over
GolfSwitch.

     2.   <u>Specific Jurisdiction</u>

Plaintiffs rely on the same contacts to establish
specific jurisdiction as they did to establish general
jurisdiction:  GolfSwitch's interactive website and its licensing
agreement with one Oregon golf course.

     a.   <u>Purposeful Direction</u>

The existence of GolfSwitch's website does
not support a finding of purposeful direction of activities at
residents of Oregon.  As the Federal Circuit noted:

> [The defendant's] website is not directed at
> customers in the District of Columbia, but
> instead is available to all customers
> throughout the country who have access to the
> Internet.  Thus, "the ability of District
> residents to access the defendants' websites
> . . . does not by itself show any persistent
> course of conduct by the defendants in the
> District."

*Trintec Indus., Inc. v. Pedre Promotional Prods.*, 395 F.3d 1271,

1280 (Fed. Cir. 2005)(quoting *GTE New Media Servs. Inc. v.*

*BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir.2000)).  In

addition, the Federal Circuit has held

> receipt of royalty income from . . .
> licensees for sales made in [the forum] is
> . . . irrelevant.  Financial benefits
> accruing to the defendant from a collateral
> relation to the forum State will not support
> jurisdiction if they do not stem from a
> constitutionally cognizable contact with that
> State.  Because the contacts of [the
> defendant's] licensees with Minnesota are not
> "constitutionally cognizable" for purposes of
> jurisdiction over [the defendant], any
> financial benefits accruing to [the
> defendant] from its licensees' relations with
> Minnesota are irrelevant.

*Red Wing Shoe*, 148 F.3d at 1361-62.  As noted, GolfSwitch's

licensing agreement with the Oregon golf course provides for

royalty payments for the use of GolfSwitch's technology.  the

agreement does not give the golf course the right to bring

actions for patent infringement based on GolfSwitch's technology

nor does it give GolfSwitch the right to exercise control over

the golf course's sales or marketing activities.  Accordingly,

like the license agreements in *Red Wing*, this agreement does not

support a finding of personal jurisdiction over GoldSwitch.

       b.    <u>Declaratory Relief Arising Out of or Related</u>
            <u>to Activities in the Forum State</u>

           Plaintiffs also seek declarations that they

did not infringe the '857 Patent, misappropriate Defendants'

18 - OPINION AND ORDER

trade secrets, breach their contract, or convert Defendants'
property.  The declaratory relief sought by Plaintiffs, however,
does not require any inquiry into the circumstances surrounding
either GolfSwitch's contract with the Oregon golf course or
GolfSwitch's website.  Those cases in which the Federal Circuit
has found the courts have specific jurisdiction over the
defendants based on relief sought by plaintiffs related to
patent-licensing agreements are distinguishable from this case.
For example, in *Deprenyl Animal Health, Inc. v. University of
Toronto Innovations Founds.*, the Federal Circuit held Kansas had
jurisdiction over the defendant when the plaintiff sought a
declaration that the accused product was not covered by the
Kansas licensing agreement.  297 F.3d 1343, 1352 (Fed. Cir.
2002).  In *Inamed Corp*, the Federal Circuit held California had
jurisdiction over the defendant when the plaintiff, a California
resident, brought a claim alleging the defendant misused its
patent by purporting to grant patent rights to the plaintiff in
California even though the defendant did not have all of the
rights in the patent.  249 F.3d at 1362.

            Here GolfSwitch's contacts with Oregon do not
arise out of or relate to the licensing agreement underlying the
declaratory relief sought by Plaintiffs.

            c.    Fairness and Reasonableness

                 On this record, the Court concludes the

exercise of personal jurisdiction over GolfSwitch in this forum would be unfair and unreasonable.  Hundreds of golf courses throughout the United States use GolfSwitch's technology, but only one of those courses is located in Oregon.  GolfSwitch's connection with that golf course is through a licensing agreement only, which, in addition, contains an Arizona forum selection clause.  Although such a clause is not dispositive, it is a factor that the Court may consider when determining whether an assertion of jurisdiction in this forum is fair or reasonable. *See LiButt v. United States*, 178 F.3d 114, 123 (2d Cir. 1999)(no purposeful availment in New York when Kentucky defendant's contact was based on an agreement containing a Kentucky choice-of-law provision).

        In addition only .2% of the 1.2 million individuals who have used GolfSwitch's internet-based system have Oregon addresses.

        Finally, neither GolfSwitch's website nor its licensing agreement with the Oregon golf course are at the heart of this litigation.

        On this record, therefore, the Court concludes the exercise of its jurisdiction over GolfSwitch would be unfair and unreasonable.

**V.    Summary**

In summary, the law requires the Court to dismiss this matter because the Court lacks personal jurisdiction over Spectrum, an indispensable party.  Even if Spectrum were not an indispensable party, the Court would have to dismiss this matter because it also lacks personal jurisdiction over GolfSwitch.

<u>**DEFENDANTS' MOTION IN THE ALTERNATIVE TO TRANSFER**</u>

The Court has determined it lacks personal jurisdiction over Defendants and, accordingly, that it must dismiss this matter. The Court, therefore, denies Defendants' Motion to Transfer as moot.

<u>**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**</u>

The Court concludes further amendments to Plaintiffs' Amended Complaint would not cure the jurisdictional defects. Accordingly, the Court denies Plaintiffs' Motion for Leave to File a Second Amended Complaint.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (#12), **DENIES as moot** Defendants' Motion in the Alternative to Transfer (#12), and

**DENIES** Plaintiffs' Motion for Leave to File A Second Amended

Complaint (#27).

IT IS SO ORDERED.

DATED this 22nd day of September, 2006.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


22 - OPINION AND ORDER